**In the Matter of Sagett**

Disciplinary Board Docket no. 38 D.B. 1989.

WRIGHT JR., *Member,* April 4, 2003—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

Petitioner, Samuel H. Sagett, filed a petition for reinstatement to the bar of Pennsylvania on June 15, 2001. Petitioner was disbarred on consent by order of the Supreme Court of Pennsylvania dated May 26, 1989.

A reinstatement hearing was held on January 22, 2002, before Hearing Committee 1.21 comprised of Chair Peter Samson, Esquire, and Members Caroline K. Reeves, Esquire, and Gerard G. Bernhardt, Esquire. Robert W. Costigan, Esquire, represented petitioner. Petitioner presented the testimony of two witnesses, as well as his own testimony.

The Hearing Committee filed a report on September 23, 2002, recommending that the petition for reinstatement be denied.

Petitioner filed a brief on exceptions on October 16, 2002. Office of Disciplinary Counsel filed a brief opposing exceptions on November 4, 2002.

This matter was adjudicated by the Disciplinary Board at the meeting of December 4, 2002.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner is Samuel H. Sagett. He was born in 1942 and was admitted to the practice of law in Pennsylvania in 1966. His current address is 42 William Feather Drive, Voorhees, NJ 08043.

(2) Petitioner was disbarred on consent by order of the Supreme Court of Pennsylvania dated May 26, 1989.

(3) Petitioner misappropriated client funds to finance a scheme whereby he sent money to a foreign businessman. Initially petitioner used his own funds for this scheme, but then resorted to using client funds.

(4) Following his disbarment, petitioner pleaded guilty in the Superior Court of Burlington County, New Jersey, to charges of theft by failure to make required disposition of property received and theft by deception.

(5) The thefts that formed the basis of the criminal conviction were: between $500 and $75,000 from David R. Johnson Sr.; and $4,801 from Martin Dubrow.

(6) Petitioner was sentenced to a period of probation of five years, with the specific condition that petitioner make full restitution. Petitioner completed his probation in 1996.

(7) In addition to the criminal charges for the above clients, petitioner misappropriated funds from a number of clients over a period of time.

(8) Petitioner does not know how many clients were victimized, but estimates that it was more than five or six and may have been 10 or 12. (N.T. 49.)

(9) Petitioner estimates that the dollar value of the theft was over $100,000. (N.T. 49.)

(10) Those clients who made a claim against the Client Security Fund of New Jersey were repaid. Petitioner then reimbursed the Client Security Fund from the proceeds of the sale of his home and assignment of a pension fund.

(11) Petitioner does not know if all of his clients from whom he misappropriated funds were repaid.

(12) Petitioner presently sells cars at a Honda dealership in Marlton, New Jersey, where he has been employed since 1993.

(13) Petitioner has been employed as a paralegal at the Philadelphia law firm of Stack & Stack since January 2000. He works 20-25 hours per week.

(14) Petitioner participated in a school program to help students gain self-esteem.

(15) Michael Stack, Esquire, and Peter Marks, Esquire, testified on behalf of petitioner.

(16) These witnesses described petitioner as capable and dependable and possessing the legal skills required for practice in Pennsylvania.

(17) Petitioner has satisfied his CLE requirements.

(18) Petitioner expressed remorse for his misconduct and stated that he has a deeper appreciation for the practice of law.

(19) Petitioner believes he has matured and is able to take on the practice of law once again.

## III. CONCLUSIONS OF LAW

(1) The misconduct for which petitioner was disbarred is not so egregious as to preclude reinstatement.

(2) Petitioner has failed to prove that he has the moral qualifications, competency and learning in the law required to practice law in Pennsylvania.

## IV. DISCUSSION

Petitioner's request for reinstatement to the bar of this Commonwealth after disbarment is initially governed by the standard set forth by the Supreme Court of Pennsylvania in *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986). The *Keller* opinion articulates a threshold question which must be met before the requirements of Pa.R.D.E. 218(c)(3)(i) are considered. This threshold inquiry is whether the magnitude of the breach of trust would permit the resumption of practice without a detrimental effect upon the integrity and standing of the bar or the administration of justice nor be subversive of the public interest. *Keller* thus requires a determination that the original misconduct was not so offensive as to preclude reinstatement.

Petitioner was disbarred on consent after he misappropriated client funds as a result of his involvement in a scheme to send money to a foreign businessman. Petitioner was involved in this scheme for many years, but it was not until 1989 that he used client funds to finance the scheme. Petitioner explained that a friend of his had gotten involved in the same scheme and committed suicide soon after. Petitioner felt tremendous guilt and depression and thereafter began using client funds. His actions in two client matters resulted in conviction in New Jersey for theft by failure to make required disposition of property and theft by deception. Petitioner admits that there are more victims, but he is not sure how many. The board and the court have previously found that such misconduct was not so egregious as to prohibit reinstatement. See *In the Matter of Perrone,* 565 Pa. 563, 777 A.2d 413 (2001); *In the Matter of Costigan,* 541 Pa. 459, 664 A.2d 518 (1995); *In re Anonymous No. 24 D.B. 84,* 14 D.&C.4th 235 (1991). Accordingly, the board finds that petitioner's misconduct, while extremely serious, is not so offensive so as to preclude reinstatement.

Having concluded that petitioner's misconduct is not so egregious as to preclude the board from considering his petition, the board must now determine whether petitioner has met his burden of proving by clear and convincing evidence that he has the moral qualifications, competency and learning in the law required for admission to practice law in Pennsylvania, and that his current resumption of the practice of law would not have a detrimental impact on the integrity and standing of the bar, the administration of justice, or the public interest. Pa.R.D.E. 218(c)(3)(i). In order to make this determination, the board must consider petitioner's efforts at reha-

bilitation and the amount of time that has passed since he was disbarred.

Approximately 14 years have passed since petitioner was disbarred. While review of the record indicates that petitioner has taken some positive steps, the board is not persuaded that he has done all that he can to rehabilitate himself.

During his disbarment, petitioner sought therapy from Thomas G. Tudor Ph.D. to help resolve depression he was experiencing. This therapy was terminated by mutual agreement in February 1991. Petitioner has worked full-time selling cars, and more recently has become a paralegal for a Philadelphia law firm, where his work is valued for its accuracy and timeliness. Petitioner took his required CLE courses and has kept current with Pennsylvania law.

These positive steps are overshadowed by petitioner's actions towards the victims of his misappropriations. Petitioner does not know exactly how many clients were victimized, but estimates it could be 10 or 12. Petitioner is unaware of how much money he misused, and estimates it could be more than $100,000.

All clients who made a claim with the Client Security Fund in New Jersey were repaid. Petitioner made reimbursement to the security fund through proceeds of the sale of his house and assignment of a pension fund. However, petitioner has no clear idea of the number of victims of his actions nor how much money he stole. He has made no efforts to determine this information. He stated that he merely turned over his files to the New Jersey disciplinary authorities and let them handle the situation. Based on petitioner's testimony there certainly is a possibility that clients exist who have

not been reimbursed. Petitioner is aware of this but has made no attempts to rectify this situation. It is incumbent upon petitioner to demonstrate efforts to find and repay each client. Petitioner's misconduct was a severe breach of the trust between lawyer and client. Perhaps petitioner may never find all victims of his crime, but efforts towards that goal would demonstrate an understanding of the seriousness of his acts and concern for the victims.

For the reasons stated above, the board recommends that the petition for reinstatement be denied.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania unanimously recommends that petitioner, Samuel H. Sagett, be denied reinstatement to the practice of law.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of the petition for reinstatement.

Board Member Morris did not participate in the December 4, 2002 adjudication.

## ORDER

And now, July 24, 2003, upon consideration of the report and recommendations of the Disciplinary Board dated April 4, 2003, the petition for review and response thereto, the petition for reinstatement is denied. Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.